CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 06, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LEON JOHNSON, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>B. MAYS, *et al.*, )<br>    Defendants. ) | Civil Action No. 7:22-cv-00342<br><br>By: Elizabeth K. Dillon<br>     Chief United States District Judge |

## MEMORANDUM OPINION

Plaintiff Leon Johnson,[1] a Virginia inmate proceeding *pro se*, brought a lawsuit that was severed into several actions, including this one, which involves plaintiff's claims of sex discrimination and/or that the conditions of her confinement violate the Eighth Amendment. (Dkt. No. 1-1; Dkt. No. 9 at 1; Second Am. Compl., Dkt. No. 52.) Before the court are cross-motions for summary judgment filed by the plaintiff (Dkt. No. 55) and the two remaining defendants, J.R. Massingill and B. Mays (Dkt. No. 60). Also before the court is a motion to appoint counsel (Dkt. No. 56), a "Declaration for Entry of Default" (Dkt. No. 65), and a "Motion to Remove Admissible Evidence" (Dkt. No. 69), all filed by plaintiff, which the court will address herein.

For the reasons stated below, defendants' motion for summary judgment will be granted, and all of plaintiff's motions will be denied.

## I. BACKGROUND

At all times relevant to this lawsuit, Johnson was housed at Red Onion State Prison (ROSP). Mays was a Correctional Officer, and Massingill was a Sergeant at ROSP.

---

[1] Johnson is transgender and refers to herself using feminine pronouns. The court does so also.

### A. Plaintiff's Allegations

On December 18, 2023, Johnson filed her second amended complaint, which is now the operative complaint in this matter, asserting claims against Mays and Massingill. Johnson alleges that Mays made harassing comments to her from June through August 2021, and that Massingill did the same from September 21, 2020, through June 22, 2021. (Second Am. Compl. ¶¶ 10–21.) In her motion for summary judgment, plaintiff asserts that defendants violated her equal protection rights by denying her opportunities to shower or making her shower with male inmates. (Dkt. No. 55-1 at 1–2.)

### B. Plaintiff's Affidavits

Johnson filed a series of affidavits in support of her motion for summary judgment and in opposition to defendants' motion for summary judgment. (*See* Dkt. Nos. 55-2, 55-3, 68-1, 68-2.) In one of these affidavits, she states that she "did exhaust all administrative remedies regarding my allegation from June 2021 through August with [Mays] and June 2021 through 2022 with Massingill." (Johnson Aff. ¶ 11, Dkt. No. 55-2.) She claims that she was "suffering from reprisal for filing a grievance or speaking in good faith" and "was not able to use my allegation by Massingill and [Mays] to report it through their chain-of-command." (*Id.* ¶ 9.) Other affidavits by her and other inmates describe various instances of harassment. (*See* Anthony Walton Aff., Dkt. No. 55-3; Johnson Affs., Dkt. No. 68-1; Bobby Moore Aff., Dkt. No. 68-2.)

### C. Defendants' Affidavits

Massingill and Mays submitted affidavits in support of their motion for summary judgment. (Dkt. Nos. 61-1, 61-2.)

On June 22, 2021, Johnson held her cell door open, preventing it from closing all the way. She pulled the door open and exited, carrying items for a shower. Officer Duty stopped

Johnson and ordered her to return to her cell. Officer Duty locked down the pod workers and instructed the control room to open another cell door to allow another transgender inmate to shower. Both inmates showered and returned to their cells. (Massingill Aff. ¶ 4.)

Johnson then exited her cell to speak with Massingill in the Building Sergeant's Office. She became argumentative, so Massingill gave her an order to return to her assigned cell. Johnson began to walk away, but then stated "nah, if you take my shower from me again, I'm gonna have to fuck somebody up over it." Johnson was then restrained and removed from the pod by Officer Duty and Officer Wiggins. Johnson received disciplinary charges for tampering with security materials, devices or equipment; being in an unauthorized area; and threatening bodily harm to a person. (Massingill Aff. ¶ 4.)

Johnson made a Prison Rape Elimination Act (PREA) complaint on June 23, 2021, alleging that Officer Duty and Massingill made sexually inappropriate comments to her. She further alleged that Massingill wrote false charges in retaliation for her making a PREA complaint against staff. The incident was investigated, and Johnson's claims were found to be unsubstantiated. (Massingill Aff. ¶ 5.)

Massingill maintains that he has not made any sexual comments to or about Johnson. He has not called her by any names or been verbally abusive to her. He also has not discriminated against her. (Massingill Aff. ¶¶ 6–7.) Massingill further testifies that he understands inmates file complaints against prison staff for the performance of their jobs, and he does not consider it a problem if he is named as a defendant in a lawsuit or if he is the subject of a grievance or complaint. He states that he would never take any action or retaliate against any inmate because he or she has named him or any other staff as a defendant or complained of him or other staff to officials at ROSP. (*Id.* ¶ 8.)

Mays testifies that he has never made any sexual comments to or about Johnson and has not called her any derogatory names. He states that to the best of his recollection, he had no issue with Johnson between June 2021 and August 2021. Based upon a review of duty rosters during this time period, Mays only worked in Johnson's building (B-3) on one occasion, serving as the building supervisor on July 18, 2021. He does not recall interacting with Johnson on that date. (Mays Aff. ¶ 4.)

Mays further testifies that he conducts himself professionally when performing his job duties and interacting with inmates. (Mays Aff. ¶ 5.) Mays has no knowledge regarding Johnson's arrangements for showering. He does not recall any interactions with Johnson. (Mays Aff. ¶ 6.)

**D. Exhaustion of Administrative Remedies**

In further support of their motion for summary judgment, defendants submit the affidavit of T. Still, the Grievance Coordinator at ROSP. (Dkt. No. 61-3.)

VDOC Operating Procedure (OP) 866.1, Offender Grievance Procedure, is a mechanism for inmates to resolve complaints, appeal administrative decisions, and challenge the substance of procedures. The process provides corrections administrators with a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. Inmates are oriented to the grievance procedure when they are received at a state facility. (Still Aff. ¶ 4.) All issues are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board; disciplinary hearings; State and Federal court decisions, laws, and regulations; and matters beyond the control of VDOC. (Still Aff. ¶ 5.)

Johnson has not filed any regular grievance alleging that she was verbally and sexually harassed by Mays during the period from June 2021 to August 2021, that Mays made her shower

with male inmates, or that Mays denied her a shower on at least one occasion. (Still Aff. ¶ 11.) Johnson attempted to file a regular grievance on July 11, 2021, regarding alleged statements made to her by several officers, including Massingill. The grievance was rejected at intake and deemed repetitive per an investigation. The grievance issue had been addressed in several of Johnson's PREA complaints. Johnson did not appeal this intake decision. There is no record that Johnson attempted to file any other grievance alleging that Massingill verbally or sexually harassed her. (Still Aff. ¶ 12.)

PREA investigations are not considered part of the grievance process. To exhaust a claim under VDOC policy, an inmate must submit a regular grievance that is accepted for intake and appealed through all available levels of review. (Still Aff. ¶ 13.)

## II. ANALYSIS

### A. Motion to Appoint Counsel

While there is no constitutional right to appointed counsel in a civil case, the court may exercise its discretion to appoint counsel for an indigent in a civil action, 28 U.S.C. § 1915(d); *see Smith v. Blackledge*, 451 F.2d 1201, 1203 (4th Cir. 1971). The Fourth Circuit has stated that counsel should be appointed only in exceptional circumstances, which "will turn on the quality of two basic factors—the type and complexity of the case, and the abilities of the individuals bringing it." *Brock v. City of Richmond*, 983 F.2d 1055 (4th Cir. 1993). The court must therefore assess (1) whether the plaintiff asserts a claim that is not frivolous, (2) the difficulty of the claim, and (3) whether the plaintiff can present the claim considering the skill required to do so and the plaintiff's individual abilities. *Jenkins v. Woodard*, 109 F.4th 242, 248 (4th Cir. 2024).

Plaintiff's claim in this matter is not frivolous. However, the issues presented by this case and plaintiff's claim are straightforward and are not complex. Johnson has demonstrated the ability to adequately litigate this and other cases by bringing this action on her own behalf and by filing numerous motions and responses to defendants' filings.[2] Also, this case largely turns on the exhaustion of administrative remedies, as opposed to witness credibility or the substantive merits of plaintiff's claim. Johnson can present argument and evidence pertaining to the exhaustion issue in response to the pending summary judgment motion. Accordingly, Johnson's motion to appoint counsel will be denied.

**B. Entry of Default**

Johnson filed a pleading labeled "Declaration for Entry of Default". (Dkt. No. 65.) Johnson argues that the court should enter default against the defendants because they have failed to answer or otherwise defend as to plaintiff's complaint, or to respond to the court's order directing them to move for summary judgment. (*Id.* at 2.) Johnson executed this document on February 1, 2024, a few days before defendants moved for summary judgment on February 5, as directed by the court (Dkt. No. 60). Therefore, Johnson's request to enter default against the defendants will be denied.

**C. Motion to Remove Admissible Evidence**

Plaintiff asks the court to remove certain exhibits filed by defendants that "do not have anything to do with the complaint plaintiff made." (Dkt. No. 69.) This motion will be denied because plaintiff does not clearly identify what exhibits or documents she wants removed or excluded.

---

[2] Johnson filed a facility request form which describes her level of education. (Dkt. No. 55-4.) Despite her relative lack of education, Johnson has clearly articulated her claims and arguments in this case.

### D. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment. *Anderson*, 477 U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

When faced with cross-motions for summary judgment, the court, applying the above standard, must consider "each motion separately on its own merits to determine whether either of

the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

While the submissions of *pro se* litigants are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court must also abide the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

### E. Defendants' Motion for Summary Judgment

#### 1. Claims that are not pleaded in the second amended complaint

Plaintiff has attempted to raise claims related to her access to showers or that she was made to shower with male inmates in her summary judgment motion, but these claims were not included in her second amended complaint, which is now the operative pleading in this matter. Before she filed her second amended complaint, the court expressly warned plaintiff that if she "wants to amend her complaint, she should file a *single* document that should be titled as an amended complaint. It may not include claims set forth in any of her other cases." (Dkt. No. 49 at 5–6 (emphasis in original).) It is well-established that a plaintiff may not raise new claims without amending the complaint. *See, e.g., Walton v. Harker*, 33 F.4th Cir. 165, 175 (4th Cir. 2022) ("Plaintiffs cannot proffer untimely issues absent from their initial pleadings to avoid summary judgment or to pursue an appeal."); *Barclay White Skanska, Inc. v. Battellee Mem. Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) ("[P]laintiffs may not raise new claims without amending their complaints after discovery has begun."). Therefore, the court will not consider these claims when ruling on the cross-motions for summary judgment.

### 2. Exhaustion under the Prison Litigation Reform Act (PLRA)

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust her administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). An inmate's failure to follow the required procedures of the prison administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion serves "two main purposes." *Woodford*, 548 U.S. at 89. First, the exhaustion requirement "protects administrative agency authority" by allowing the agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Id.* Second, "exhaustion promotes efficiency" because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Shipp v. Punturi*, Civil Action No. 7:21cv00414, 2023 WL 7125259, at *3 (W.D. Va. Oct. 30, 2023) (citing *Aquilar-Avellaveda v.*

9

*Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of [her] own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

Pursuant to VDOC's policies, an inmate must submit a regular grievance which is accepted for intake and appealed through all available levels of review. (Still Aff. ¶ 13.) Johnson failed to exhaust her claims in this manner through the regular grievance process. Plaintiff relies on her PREA complaints (Dkt. No. 66), but the PREA process is not part of the regular grievance process. *See Cooper v. Barksdale*, CASE NO. 7:15CV00522, 2016 WL 5231827, at *6 (W.D. Va. Sept. 20, 2016) ("OP 866.1 does not provide for inmates to substitute a PREA telephone report in place of an informal complaint or a regular grievance."); *Barringer v. Stanley*, 5:16-cv-17-FDW, 2017 WL 1028595, at *3 (W.D.N.C. Mar. 16, 2017) ("PREA complaints are not prison grievances for purposes of satisfying the administrative remedies requirement under the PLRA.") (collecting cases). Plaintiff also states that it would not have made any difference if she appealed the intake decision on her complaint against Massingill. (Dkt. No. 66 at 3.) This is pure speculation and is insufficient to create an issue of fact as to the availability of administrative remedies. *See Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (stating that courts applying the PLRA "may not read futility or other exceptions into statutory exhaustions requirements where Congress has provided otherwise"); *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999) ("There is no futility exception to the PLRA's exhaustion requirement.").

For these reasons, defendants are entitled to summary judgment.

### 3. Verbal harassment

Even if plaintiff had established or demonstrated an issue of fact on whether she exhausted her administrative remedies, it is well-established that verbal harassment is insufficient to state an Eighth Amendment claim based on unconstitutional conditions of confinement. A "constitutional claim based only on verbal harassment or threats, with no reinforcing act, does not state a claim under . . . the Eighth Amendment cruel and unusual punishment clause . . ." *Hernandez-Martinez v. Pyatt*, C/A No. 6:07-cv-1036-GRA, 2008 WL 220630, at *5 (D.S.C. Jan. 25, 2008); *Johnson v. Chaffin*, Case No. 7:23cv00229, 2024 WL 3555379, at *5 (W.D. Va. July 25, 2024) (collecting authority for the proposition that "[v]erbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety," do not give rise to an Eighth Amendment violation). For this additional reason, defendants are also entitled to summary judgment.

### F. Plaintiff's Motion for Summary Judgment

In her motion for summary judgment plaintiff argues that she exhausted her administrative remedies by pursuing a PREA grievance. (*See* Pl.'s Br. 3–5, Dkt. No. 55-1.) As noted, this process is not part of the regular grievance process. Plaintiff's motion for summary judgment will be denied for the same reason that defendants' motion will be granted: there are no genuine issues of fact on the exhaustion issue.

### III. CONCLUSION

Based on the foregoing, the court will issue an appropriate order granting defendants' motion for summary judgment and denying plaintiff's motions for summary judgment, to

appoint counsel, for entry of default, and to remove admissible evidence.

      Entered: September 6, 2024.

                                                    */s/ Elizabeth K. Dillon*
                                                    Elizabeth K. Dillon
                                                    Chief United States District Judge